## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| KOLEMAN R. FINKELSTEIN | CIVIL DOCKET NO. 6:22-CV-01180 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| THE OLD EVANGELINE DOWNS, L.L.C. | MAGISTRATE JUDGE CAROL B. WHITEHURST |

### MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") [Doc. 25] filed by Defendant, The Old Evangeline Downs, L.L.C. ("Defendant" or "OED"). An Opposition [Doc. 32] was filed by Plaintiff, Dr. Koleman R. Finkelstein ("Plaintiff" or "Dr. Finkelstein"), to which Defendant filed a Reply. [Doc. 33]. The Court heard argument from counsel on May 25, 2023, after which it took the matter under advisement. After due consideration of the merits and for the following reasons, the Defendant's Motion is GRANTED.

### FACTUAL BACKGROUND

On March 30, 2021, Dr. Finkelstein and his colleague, Brett Bonin ("Bonin"), arrived at the Old Evangeline Downs equestrian racetrack in Opelousas, Louisiana to attend a meeting of the Louisiana State Racing Commission ("LSRC").[1] [Doc. 25-1, p. 7]. Once they arrived, Dr. Finkelstein and Bonin were walking in the main hallway of OED when Dr. Finkelstein tripped and hit his head on the floor, allegedly causing him to break his nose and injure his back and shoulder. [Doc. 33, p. 6]. Bonin

---

[1] Dr. Finkelstein serves as a Commissioner for the LSRC. Brett Bonin is the Assistant Attorney General assigned to the LSRC. [Doc. 32, p. 6].

and a nearby patron immediately helped Dr. Finkelstein get up, escorted him to a nearby bench, and promptly notified security of the incident. *Id.* Once notified, OED Security Shift Supervisor Nicole Vidito ("Vidito") inspected the area and took photographs and statements from Bonin and Dr. Finkelstein, who claimed that he had "tripped on freshly waxed floor." *Id.* Vidito indicated in her incident report, however, that she did not observe anything on the floor in the area where Dr. Finkelstein fell. [Doc. 25-1, p. 8]. After the fall, Dr. Finkelstein and Bonin attended the LSRC meeting. [Doc. 32, p. 6]. When the LSRC meeting concluded approximately five hours later, Dr. Finkelstein and Bonin returned to the site of the fall to take pictures in the area where they believed the fall had occurred.[2] [Doc. 25-1, p. 12]; [Doc. 32, p. 6].

On March 22, 2022, Dr. Finkelstein filed suit against OED in the 27th Judicial District Court, St. Landry Parish, Louisiana. [Doc. 1]. OED removed the suit to this Court on May 3, 2022, invoking the Court's diversity jurisdiction pursuant to 18 U.S.C. § 1332. A removal order was entered on May 5, 2023. [Doc. 6]. OED filed a motion for summary judgment on January 20, 2023, asserting that Dr. Finkelstein cannot meet the requisite evidentiary burden under the Louisiana Merchant Liability Act. La. R.S. 9:2800.6. [Doc. 25]. Specifically, OED contends that Dr. Finkelstein is unable to meet his evidentiary burden that OED either: (i) created the allegedly

---

[2]     The pictures, taken by Bonin, include an image of a footprint that Dr. Finkelstein "recognized … as being from his shoe." [Doc. 32, p. 10]; [Doc. 32-2, p. 59]. Bonin testified, however, that he took the pictures five hours after Dr. Finkelstein fell and that the floors had been cleaned in the interim by OED employees. [Doc, 25-1, p. 12]; *see* [Doc. 32, p. 11]. Moreover, Bonin stated that the pictures were taken "from [his] memory" of where the fall occurred, not the precise location of the fall. [Doc. 25-3, p. 27].

hazardous condition or (ii) had actual or constructive notice of the condition and subsequently failed to exercise reasonable care.  [Doc. 25]; [Doc. 33].  In response, Dr. Finkelstein alleges that OED created the hazard by failing to properly maintain its floors and circumstantial evidence shows that OED had constructive knowledge of the hazard.  [Doc. 32].

L<small>AW AND</small> A<small>NALYSIS</small>

## I.   **Summary Judgment Standard**

A court should grant a motion for summary judgment when the pleadings in conjunction with affidavits and documentary evidence, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  In applying this standard, the court should construe "all facts and inferences in favor of the nonmoving party."  *Deshotel v. Wal-Mart Louisiana L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery.  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).  The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden.  *Id.*

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* (citing

*Celotex*, 446, U.S. at 325).  There is no genuine issue for trial — and thus a grant of summary judgment is warranted — when the record as a whole "could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    <u>Louisiana's Merchant Liability Act</u>

In a diversity case such as this one, federal courts apply state substantive law. *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Under Louisiana law, OED's potential liability for Dr. Finkelstein's accident and injuries is governed by the Louisiana Merchant Liability Act.  La. R.S. 9:2800.6 (the "Merchant Liability Act").  The Merchant Liability Act imposes a duty of care on a merchant to those lawfully on its premises, "to keep the premises free of any hazardous conditions which reasonably might give rise to damage."  La. R.S. 9:2800.6(A).  When a negligence claim is brought against a merchant based on injuries sustained in a fall caused by a condition on the merchant's premises, a plaintiff must show that the defendant was negligent and that:

1)  The condition presented an unreasonable risk of harm to the claimant and the risk of harm was reasonably foreseeable;

2)  The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and

3)  The merchant failed to exercise reasonable care.

La. R.S. 9:2800.6(B).

Importantly, a plaintiff must prove each of these elements by competent evidence.  "The burden of proof does not shift to the defendant at any point and failure to prove any of these elements negates a plaintiff's cause of action."  *Melancon v.*

*Popeye's Famous Fried Chicken*, 10-1109, p. 3 (La. App. 3 Cir. 3/16/11), 59 So.3d 513, 515 (*citing White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97), 669 So.2d 1081); *Ferrant v. Lowe's Home Centers, Inc.*, 494 F. App'x 458, 460 (5th Cir. 2012).

OED's Motion posits that Dr. Finkelstein cannot meet the factual showing required by the Merchant Liability Act, *i.e.,* that OED either created or had actual or constructive notice of the harm which caused Dr. Finkelstein to fall. [Doc. 25-1, p. 13]. For the following reasons, the Court agrees that summary judgment is appropriate.

### III.   Plaintiff Has No Evidence that a Hazardous Condition Existed

As a threshold matter, the Court must first determine if there is any evidence that a hazardous condition existed.  Here, Plaintiff argues that OED's floor was maintained in such a way to render it "sticky" or "slippery" and thus potentially constituted an unreasonably dangerous condition.  OED counters that Plaintiff lacks evidentiary support that the floor was in any way hazardous and further contends that Dr. Finkelstein's own deposition testimony precludes his claim.  Specifically, Dr. Finkelstein testified in his deposition that he "did not know what the substance was," but that he "assume[d]" his foot stuck on the floor.  [Doc. 25-3, pp. 11, 5].  In his Opposition, Dr. Finkelstein asserts that the deposition testimony and photographs taken by Bonin are sufficient to "identify the existence of some hazardous condition that caused his fall," and thereby create a genuine dispute of material fact. [Doc. 32, p. 9].

Speculative allegations as to the presence of a substance on the floor are insufficient to defeat summary judgment.  *See, e.g., Ammon v. Dillard's Dept. Store No. 768*, 2015 WL 3860367 (M.D. La. June 22. 2015) (finding plaintiff who "could not

identify any substance on the floor before or after her fall, and [ ] merely relie[d] on the allegation that the floor was unreasonably slippery" failed to provide "positive evidence" of a condition and thus, could not survive summary judgment).  In this vein, plaintiffs who merely speculate that floor wax caused their fall, without any additional evidence, cannot survive summary judgment.  *See, e.g., Trench v. Winn-Dixie Montgomery LLC.*, 150 So.3d 472, 476-77 (La. App. 5 Cir. 9/24/14) (holding plaintiff who "speculated that she slipped due to wax on floor" and failed to produce "evidence that anyone actually saw any wax buildup or any other foreign substance … on the floor" was unable to withstand summary judgment); *McGinnis v. Target Corp. of Minnesota*, No. CV 18-9693, 2019 WL 4393135 *5-6 (E.D. La. Sept. 13, 2019), *aff'd* 801 F. App'x 298 (5th Cir. 2020).  Accordingly, Dr. Finkelstein's claim that the floor was "slippery or sticky" and Bonin's claim that "it just felt like my foot caught on something," without more, is insufficient evidence of a hazardous condition.[3]

---

[3]     Plaintiff has also filed a MOTION FOR ADVERSE INFERENCE [Doc. 36] asking the Court to issue an adverse presumption against OED because "circumstantial evidence shows that OED destroyed nearly all footage of work performed by custodial staff before or after the fall." [Doc. 36-1, p. 2].  Essentially, Plaintiff contends that but for OED's "intentional" destruction of video evidence, he would be able to prove that OED created a hazardous condition.

The Fifth Circuit allows an adverse inference against a party who destroys evidence "only upon a showing of 'bad faith' or 'bad conduct.'"  *Coastal Bridge Co. L.L.C. v. Heatec, Inc.,* 833 F. App'x 565, 572 (5th Cir. 2020) (citations omitted).  Adverse inference sanctions are properly viewed as among the most severe sanctions a court can administer." *Patrick v. Tractor Supply Co.,* CV 16-10755, 2017 WL 396301, at *6 (E.D. La. Jan. 30, 2017).  A spoliation claim has three elements: (i) "the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction;" (ii) "the evidence must have been intentionally destroyed;" and (iii) "the moving party must show that the spoliating party acted in bad faith."  *Id.* at 574. "

Here, Plaintiff's motion is void of any evidence that OED intentionally destroyed evidence, or that OED otherwise acted in bad faith.  Rather, Plaintiff asks the Court to infer OED acted in bad faith based on OED's alleged failure to comply with their standard operating procedures.  [Doc. 36-1, pp. 6-7].  Primarily, Plaintiff argues that OED failed to properly

Given that Dr. Finkelstein has failed to meet his burden that an unreasonably dangerous condition existed at the time of Dr. Finkelstein's fall, summary judgment is appropriate.

### CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's MOTION FOR SUMMARY JUDGMENT [Doc. 25] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's MOTION FOR ADVERSE INFERENCE [Doc. 36] is DENIED.

IT IS FURTHER ORDERED that all of Plaintiff's claims are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 6th day of July 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE

---

retain video footage after the incident.  *Id.*  But, in fact, the video OED retained and provided to Plaintiff complies with its internal policies.  *See* [Doc. 38].  Plaintiff also asks the Court to infer that Vidito's failure to take a picture of Dr. Finkelstein pointing out where he fell immediately after the fall is evidence of bad faith.  The Court, however, is not inclined to make such an inference.  Accordingly, Plaintiff's Motion for Adverse Inference is DENIED.